STATE of North Dakota, Plaintiff and Appellee,

v.

Bonnie HAMANN, Defendant and Appellant.

Cr. No. 609.

Supreme Court of North Dakota.

Jan. 19, 1978.

Dale W. Moench, Asst. State's Atty., Dickinson, for plaintiff and appellee.

Jerome L. Jaynes, Hettinger, for defendant and appellant.

SAND, Justice.

The appellant, Bonnie Hamann, pleaded guilty to theft of property and a judgment of conviction was entered in Stark County Court with Increased Jurisdiction on 26 April 1977. She was sentenced on 8 June 1977 to a period of 30 days in the Stark County jail, of which 10 days were suspended for a period of one year, provided she had no criminal violations during that time.

The defendant made a motion for reduction of sentence dated 14 June 1977. She also moved the court for permission to withdraw her guilty plea on the ground that she was not involved in the offense to which she entered a guilty plea and because "she pled guilty contrary to her own will and desire and was coerced into pleading

guilty by her attorney who promised her she would not serve any time in the jail if she pled guilty." [1]

At a post-conviction hearing held 17 June 1977, the court denied the defendant's motion for a reduced sentence because it could not "see any compelling reason to grant it." The court also denied defendant's motion to withdraw her plea.

The defendant filed a notice of appeal and a motion to stay the judgment. The court granted the motion to stay its judgment until her appeal had been exhausted, and also released the defendant on her own recognizance pending appeal.

On appeal, defendant contended that the trial court did not fully comply with Rule 11 of the North Dakota Rules of Criminal Procedure before accepting her plea of guilty. She also asserted that the trial court erred in denying her motion to withdraw her plea of guilty.

The defendant was originally charged on 10 November 1976 with the offense of criminal attempt [theft], a felony, in violation of § 12.1–06–01 of the North Dakota Century Code. On 14 April 1977 the State moved to amend the criminal complaint to charge the defendant with theft of property, in violation of § 12.1–23–02(3), NDCC, a misdemeanor. This motion was made on the basis of a plea agreement between the State and the defendant. The State also informed the court it had insufficient evidence to prove the criminal attempt charged in the original complaint. Pursuant to the plea bargain, the State agreed to move to amend the complaint, based on the evidence, and the defendant agreed to plead guilty to the amended charge, subject to the approval of the court.

The defendant, represented by counsel, entered her guilty plea at the 26 April 1977 hearing. At that hearing, the plea agreement was presented to the court, after which the court asked, "Is that the plea agreement as understood by the Defendant?" Her attorney answered yes, and added:

"My client claims that she did not know that these two bandages were there. However, the evidence which I have examined would indicate that she should have known, and, most likely, the trier of the facts, that she did know these two bandages were in her apartment. So we have bargained and agreed to plead to the charge as stated by Mr. Moench."

The court then asked:

"Bonnie, do you understand the results of the plea to the Amended Complaint, if, in fact, the motion is granted?

"THE DEFENDANT: Yes, I do.

"THE COURT: Do you understand that you subject yourself to the maximum penalty of $500.00 or a thirty-day jail sentence, or both?

"THE DEFENDANT: Yes, I do.

"THE COURT: Okay. Are you willing then to accept this plea agreement as offered by the State?

"THE DEFENDANT: Yes, I am."

The court granted the motion to amend the criminal complaint, read the amended complaint, and asked the defendant to enter a plea. The defendant then entered her guilty plea. The court ascertained that her plea was entered pursuant to the plea agreement and also asked:

"Is part of the plea agreement that the State would make no recommendation, or was there anything discussed?

"MR. MOENCH [State's Attorney]: I don't think that's part of the plea agreement. However, I don't have any particular recommendation, Your Honor, regarding this matter."

The court continued the case for sentencing to 25 May 1977.

Because of intervening events, the sentencing was delayed until 8 June 1977, at which time the defendant was represented by different counsel. The attorney who represented her in the plea negotiations

1. Defendant was represented by different counsel at her sentencing and post-conviction hearings.

with the State and when she entered her plea of guilty requested permission to withdraw from the case. The court granted its permission on 25 May 1977. The defendant obtained a second attorney who represented her when the court sentenced her to 30 days in the county jail, ten days suspended for a one year period, provided she would incur no criminal charges during that time.

A post-conviction hearing was held on 17 June 1977 at which the defendant asked for a reduction of sentence. The court denied the motion for the reduction of sentence and also denied a motion for withdrawal of the guilty plea.

At the initial proceedings before the plea bargain agreement was reached and prior to the entry of her guilty plea, the defendant signed an affidavit and waiver on 23 November 1976, at which time she had pleaded not guilty to the offense of criminal attempt in a written statement. In this affidavit and waiver statement, the defendant enumerated her constitutional rights, including, in part:

"I understand that I have the right to remain silent.

.     .     .     .     .

"I understand that I am entitled to trial by jury and do hereby request same."

The defendant changed her plea from not guilty to guilty at the 26 April 1977 hearing pursuant to a plea bargain agreement.

We consider first defendant's contention that Rule 11, N.D.R.Crim.P., was not sufficiently complied with by the court. The defendant asserts that:

1. The court did not inform her of the constitutional rights she would be waiving by pleading guilty;

2. The court failed to personally address the defendant concerning her plea to determine if it was voluntary or the result of promises apart from a plea bargain;

3. The nature of the offense charged in the amended complaint was not explained to her;

4. She was not informed of the "minimum possible" punishment for the offense; and

5. The court failed to determine whether there was a factual basis for her plea of guilty.

The United States Supreme Court, in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), noted that a plea of guilty to an offense acts as a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination; the right to trial by jury; and the right to confront one's accusers. The Court also said, "We cannot presume a waiver of these three important federal rights from a silent record." *Boykin, supra* at 243, 89 S.Ct. at 1712.

Later, in *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the United States Supreme Court said that waivers of constitutional rights must be voluntary and knowing.

The North Dakota Supreme Court, in *State v. Storbakken*, 246 N.W.2d 78, 83 (1976), held that

"Neither Rule 11 nor compliance with *Boykin* due process standards states that the trial judge must specifically inform a defendant, *eo nomine*, of his rights he waives by pleading guilty. [Citations omitted.] It is sufficient to satisfy due process that such knowledge on the part of the defendant is clearly reflected from the whole record, not just the interrogation of the defendant by the trial court."

■ It is clear from the record that the defendant was aware of her constitutional rights. At the time she originally pleaded not guilty to the offense charged, she signed a written affidavit and waiver in which she enumerated her constitutional rights and said that she understood them. We note that the defendant was represented by counsel at all stages of the proceedings.

Although the court did not restate the defendant's constitutional rights at the time it accepted her guilty plea or follow the exact format of Rule 11, N.D.R.Crim.P., the court did personally address the defendant

to determine whether her plea was voluntary and intelligent. This court, in *State v. Storbakken, supra* at 83, said that there is no requirement that the court follow a "specific legal ritual" in determining that a plea is voluntary and intelligent.

The defendant has also charged that the court failed to personally address her concerning her plea to determine whether it was voluntary or the result of promises apart from a plea bargain. She specifically claims that she was coerced into pleading guilty by her attorney, who promised her she would not serve any time in jail if she pleaded guilty. At the post-conviction hearing the court interrogated defendant on this point.

"Q And you're telling the Court but for that advice you wouldn't have entered your plea of guilty? Is that what you're saying?

"A I don't really understand this, because I was told that no one would believe Gary Pavlicek if he told the truth because I associated with him, so they would assume that he was lying to protect me. And it was explained to me also this way: Mr. Greenwood said, 'If you go to court on those burglaries, you don't have a chance of winning them.' I said, 'How about if Gary Pavlicek gets up and says what he has to say?' He said, 'That doesn't matter. Burglaries are a felony. You'll lose your cattle buying license. And this is a misdemeanor, and you won't.'

"Q So you took a chance for something certain versus something uncertain?

"A I listened to my attorney, because that's what I [was] advised to do over and over again.

"Q Did this Court at any time ever tell you that you would not be jailed?

"A No.

"Q Did it tell you more than once that the jail sentence could be thirty days?

"A Yes.

"Q Did the States Attorney's office ever tell you that you wouldn't be jailed?

"A No.

"Q So what you're saying to us is that Mr. Greenwood told you that several times before you entered the courtroom and didn't tell you that afterwards.

"A Yes, that's true."

The record also discloses that the State made no recommendation as to sentencing and that the plea agreement did not contain any recommendation as far as sentencing.

The United States Supreme Court in *Parker v. North Carolina*, 397 U.S. 790, 797, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), said that a petitioner cannot withdraw a guilty plea entered in reliance on his counsel's "bad" advice when that advice "is within the range of competence required of attorneys representing defendants in criminal cases." Earlier, in *McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1462, 25 L.Ed.2d 763 (1970), the United States Supreme Court held that a petitioner must demonstrate gross error on the part of his attorney in recommending that he plead guilty.

In the instant case, the defendant has not demonstrated that her counsel committed gross error in advising her to plead guilty to the lesser charge of theft of property. She had originally been charged with criminal attempt. The court asked the defendant:

"Q How many felonies were you charges [*sic*] with at one time; do you recall?

"A Six.

"Q And in this district how many?

"MR. MOENCH: Two.

"MR. JAYNES: Two.

"Q (The Court continuing) And there were some someplace else, right?

"THE DEFENDANT: Three in Hettinger, and two here?

"MR. JAYNES: That's correct.

"A Five then.

"Q (The Court continuing) You had the two separate burglaries of Minuteman Pharmacy you were charged with?

"A I think so, yes.

"Q Then you were, subsequently, charged with criminal attempt.

"A Yes, I guess so.

"Q And those two felonies were dismissed upon your entering a plea here, is that correct?

"A I understand now, I guess that was the case, yes.

"Q See, I wasn't privy to any of that. I don't know what happened with the felonies. I was led to believe this had all been worked out. There was a plea agreement, you would do this, and the other cases would be dismissed. Isn't that exactly what happened?

"A I guess so.

"Q You entered a plea, and the other cases were dismissed?

"A I can tell you right now, Judge Ewing, this was not all explained to me now at all. Very little was explained to me, even though I asked questions several times. And I told you what Mr. Greenwood said."

■ It is apparent from the post-conviction hearing that the defendant got a bargain. In exchange for pleading guilty to a misdemeanor charge in Stark County Court with Increased Jurisdiction the State dropped two felony charges against her.

The defendant has offered no evidence of coercion, but she has asserted that her attorney promised that she would serve no jail time if she entered a guilty plea. The defendant's position, except for her self-serving assertion, is not supported by the record. At the time the guilty plea was entered, the court asked whether the State would make a recommendation, to which the State responded that such a recommendation was not a part of the plea agreement. The defendant also testified at the post-conviction hearing that neither the court nor the State's Attorney ever told her that she would not be jailed. She said that the court had in fact informed her that the sentence could be thirty days in jail.

In *State v. Barlow*, 193 N.W.2d 455, 462 (N.D.1971), we said that

"Determining the sentence to be given a defendant is a function of the trial judge and we are disinclined to believe that a state's attorney would make such a promise without some showing other than the unsupported assertion of the accused."

The defendant in that case claimed that the state's attorney had promised him a suspended sentence upon entry of a guilty plea.

■ The defendant here claimed that her attorney promised her no jail sentence. The record shows that no recommendation as to sentencing was a part of the plea agreement. We cannot believe that defendant's counsel would make such a promise without some evidence other than defendant's unsupported assertion. Previously, we have said that when there is a contradiction between the record and the unsupported assertion of an accused, we are compelled to accept the record. *Barlow, supra* at 460; *State v. Starratt*, 153 N.W.2d 311 (N.D.1967).

In *State v. Storbakken, supra* at 85, the defendant said that his attorney told him he would receive probation, rather than the three-year sentence which was imposed when he entered a guilty plea. Because this statement was inconsistent with his statements made at the time he entered his plea, we said that it had no credibility other than to reflect defendant's subjective belief at that time. We also said:

"A defendant's own subjective belief that he would receive probation, when unsupported by any promises from the government or indications from the court, is insufficient to invalidate a guilty plea as constituting an unintelligent, unknowing, or involuntary plea. *United States v. Maggio*, 514 F.2d 80, 88 (5th Cir. 1975) . . ."

In defendant's case, we have determined from the totality of circumstances that the trial court did assure itself that defendant's plea was voluntary and intelligent.

■ The defendant has claimed, too, that the trial court failed to determine whether there was a factual basis for her plea of guilty to the offense of theft of property. In *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the United States Supreme Court said that Rule 11 requires a court to satisfy itself

that there is a factual basis for a guilty plea. Although we have said that this court is not compelled to interpret state procedural rules derived from federal rules in the same fashion as federal courts, we have observed that such decisions are highly persuasive. *State v. Storbakken, supra* at 83.

■ In the instant case, the court heard the State's motion to amend the complaint to theft of property. Based on the State's written motion to amend the complaint and the explanation of the defendant's attorney as to the evidence against the defendant and in support of the amended charge, the trial court had a sufficient basis to conclude that there was a factual basis for defendant's guilty plea. The undisputed evidence showed that two bandages stolen from the Minuteman Pharmacy in Dickinson were found in the defendant's apartment although defendant claims she had no knowledge of their presence or that they were stolen. We think that the evidence which the court heard constituted a factual basis for the court's acceptance of the defendant's guilty plea. See *State v. Ware*, 126 N.W.2d 429 (Minn.1964).

We also reject defendant's contention that the nature of the offense charged in the amended complaint was not explained to her, and that the court failed to advise her of the "minimum possible" punishment for the offense given. The United States Supreme Court, in *Henderson v. Morgan*, 426 U.S. 637, 49 L.Ed.2d 108, 96 S.Ct. 2253 (1976), said that a defendant's plea cannot stand as an intelligent admission of guilt where he does not have adequate notice of the nature of the charge against him, or proof that he in fact understood the charge.

The trial court, in this instance, expressly asked the defendant:

"Bonnie, do you understand the results of the plea to the Amended Complaint, if, in fact, the motion is granted?

"THE DEFENDANT: Yes I do."

■ Prior to this the State had moved to amend the original charge, and in its motion explained the charge against the defendant. The record shows that the defendant was involved in a plea bargain, that she knew of the motion to amend the complaint and consented thereto; and that she said she understood the plea. We cannot conclude that defendant did not understand the offense charged where the record shows that the offense was explained to her; and that the trial court gave the defendant an opportunity to be better informed as to the charge against her.

■ The defendant's contention that she was not informed of the "minimum possible" sentence for the offense charged is without merit. Rule 11(b)(2), N.D.R. Crim.P., states that the court must inform the defendant of "the *mandatory minimum punishment*, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered." The defendant was informed of the maximum possible punishment, but in this instance there is no "mandatory minimum punishment" for theft of property. See §§ 12.1–23–02(3), 12.1–23–05 and 12.1–32–01, NDCC. The defendant may have confused mandatory minimum punishment with "minimum possible" which the court is not required to give.

Finally, the defendant contends that the trial court erred in denying her motion to withdraw her plea of guilty. This motion was denied on 17 June 1977 at the post-conviction hearing after defendant's attorney informed the court that defendant's time for appealing expired that day.

We do not know if the trial court would have reached a different conclusion if the defendant had more time to consider the motion to withdraw the plea of guilty. Neither would counsel for the defendant indicate any awareness of Rule 4 of the North Dakota Rules of Appellate Procedure, which provides that the time of appeal is tolled while certain motions are pending.

■ In the absence of an abuse of discretion on the part of the trial court, its decision to deny defendant's motion to withdraw her guilty plea will stand. We refus-

ed to allow the defendant in *State v. Hastings*, 54 N.D. 871, 211 N.W. 813, 814, 815 (1926), to withdraw his guilty plea, stating:

"A plea of guilty is as much a conviction as is a verdict of guilty by a jury, in fact, if anything, it should be entitled to greater weight. It is a solemn statement of the defendant himself with full knowledge of all the facts; a knowledge which is peculiarly his own. No one else is in better position to know the facts. This court would not reverse a conviction without the defendant showing reversible error. The defendant is convicted on a plea of guilty, and it must require more than a change of opinion on the part of the defendant to reverse the conviction."

The United States Eighth Circuit Court of Appeals held in *Sherburne v. United States*, 433 F.2d 1350, 1353 (1970), that the defendant seeking to withdraw his guilty plea "bears the burden of proof and resolution of this issue is within the sole discretion of the trial court, the only question on appeal being whether the discretion was abused."

█ We find no abuse of discretion in this instance where the defendant was represented by counsel during the entire proceeding; where defendant first entered a plea of not guilty and later changed her plea to guilty after plea negotiations on her behalf; and where there was a time interval of almost two months between the entry of her plea and her appearance for judgment and sentencing. We also note that the defendant is an educated business woman with experience and judgment. We have already determined that her plea was entered knowingly and voluntarily.

The defendant was not a stranger to the procedures involved in criminal matters. Two felony charges were dismissed as a part of her plea bargaining agreement. She was also under a deferred imposition of sentence arrangement from a previous vio-

lation of law on which a hearing was held to determine whether or not her probation should be revoked and sentence imposed.[2]

█ Furthermore, an approved plea bargaining agreement has qualities similar to that of a contract. *Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir. 1972). A mere change of mind or second view is not enough to permit a withdrawal of a guilty plea.

As we indicated in *State v. John Motsko*, Crim. No. 600, 261 N.W.2d 860 (N.D. December 19, 1977), effectiveness of counsel is not to be judged by hindsight. Neither should we permit a change of mind or second view to be the sole basis for setting aside a plea bargaining agreement entered into between the State and the defendant.

For the reasons stated, the judgment of conviction of the Stark County Court with Increased Jurisdiction is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.

---

2. At the hearing in which the plea agreement was accepted by the court, the court stated that it was about to issue an order concerning a previous deferred imposition of sentence for 18 months on the condition that the defendant

obtain medical treatment and not violate any law for 18 months, which clearly indicates that the defendant was not a novice or stranger to the processes involved.